10 So.2d 159

**STEWART v. STEPHENSON et al.**

**8 Div. 174.**

Supreme Court of Alabama.

Oct. 8, 1942.

Julian Harris and Norman W. Harris, both of Decatur, for appellant.

Chas. H. Eyster and W. F. Boswell, Jr., both of Decatur, for appellees.

BOULDIN, Justice.

Appellant, as junior mortgagee of real estate, filed his bill to effectuate a statutory right of redemption coming into being upon the foreclosure of a senior mortgage. Respondents, purchasers at the foreclosure sale, interposed demurrers ·to the bill as amended. The court sustained the equity of the bill as regards complainant's right of redemption, but sustained demurrers challenging the terms upon which complainant offered to redeem. Complainant appeals from that decree.

The sole inquiry presented by the record is what are the lawful charges upon redemption under the peculiar facts disclosed by the bill?

James E. Peck, the mortgagor, owned two tracts or parcels of land. For clarity and convenience, we designate one as his "City Residence," the other as the "Farm."

He executed four mortgages.

First. A mortgage on the Farm to Federal Land Bank for $1,500. This mortgage is still outstanding, the rights of the mortgagee therein not involved. It figures only in the after dealings to be noted later.

Second. A mortgage on both tracts to T. J. Russell for $5,000. This mortgage became the property of respondent, Mrs. Erin C. Stephenson, who foreclosed same July 12, 1941, by sale under the power. The tracts were sold separately and both purchased by the mortgagee, Mrs. Stephenson and Mrs. Ethel C. Sherrill, jointly; the City Residence at $1,825 and the Farm at $6,100.

Third. A mortgage or deed of trust on the Farm to Arthur Stephenson for $10,000. This mortgage became the property of Mrs. Stephenson and Mrs. Sherrill, and was owned by them at the time of the foreclosure and purchase above noted.

Fourth. A mortgage on the City Residence to complainant, Stewart, for $2,000.

The bill concedes and proceeds on the theory that complainant, a junior mortgagee of part of the property purchased by respondents at foreclosure sale of the senior mortgage, must redeem both tracts and seeks so to do. Since the court sustained this feature of the bill, we are not concerned with whether complainant could redeem only the parcel covered by his mortgage, nor whether his right of redemption was limited to that parcel. See Francis et al. v. White, 166 Ala. 409, 52 So. 349; Jones v. Matkin, 118 Ala. 341, 348, 24 So. 242; Lord v. Blue, 200 Ala. 521, 76 So. 463.

The bill does not allege the purchase price of the two tracts at foreclosure sale were sufficient to cover the balance of the debt secured by the mortgage foreclosed and the balance due on the third mortgage, then owned by the purchasers. The bill makes no offer to pay the balance due on these superior mortgages. Lawful charges include "any other valid lien or incumbrance paid or· owned by such purchaser." Code of 1940, Title 7, § 732(3).

Under the facts thus far stated, any balance on the third mortgage is a lawful charge upon redemption of the entire property.

By further averments, now to be considered, complainant insists this debt has been extinguished, and is no longer an incumbrance payable on redemption.

Pending the foreclosure, the mortgagor and mortgagees, entered into negotiations, which were consummated after foreclosure by a written agreement and a deed both dated July 12, 1941, made exhibits to the bill. The agreement stipulates: That the undersigned, Erin C. Stephenson, and Ethel C. Sherrill, "for and in consideration of Jas. E. Peck and Gladys Peck conveying to the said Erin C. Stephenson and Ethel C. Sherrill certain real estate described in a deed from the said Jas. E. Peck and Gladys Peck to the said Erin C. Stephenson and Ethel C. Sherrill, bearing date July 12, 1941, and in consideration of their paying an installment due on a mortgage executed by Jas. E. Peck to the Federal Land

Bank of New Orleans, said installment being in the amount of $78.77, and in consideration of their paying State, County, and City taxes on the land described in said deed which were due on October 1, 1940, and are in the amount of $197.28, and in consideration of the sum of $1 to each of the undersigned in hand paid by the said Jas. E. Peck and Gladys Peck, the receipt of which is acknowledged, do hereby fully compromise and settle, and do hereby release and discharge the said Jas. E. Peck and Gladys Peck of and from all actions and causes of action, suits, debts, accounts and notes, held by the undersigned, or either of the undersigned, against the said Jas. E. Peck and Gladys Peck, or either of them."

The deed recites a consideration of ($10) and other valuable consideration; conveys both tracts, an undivided seven-tenths to Erin C. Stephenson and three-tenths to Ethel C. Sherrill, with warranty of title save as to Federal Land Bank mortgage, which is assumed by the grantees. The deed then recites the giving of the Russell mortgage, then held by Mrs. Stephenson, and the giving of the Stewart mortgage, excepts the latter mortgage, also improvement assessments, from the warranty. The deed then stipulates:

"And this deed shall not be construed, and it is not the purpose of this deed to give the Stewart mortgage any priority over the Russell mortgage now owned by Mrs. Erin C. Stephenson, and the rights of Mrs. Erin C. Stephenson, as transferee of the Russell mortgage, shall always be superior to the rights of J. F. Stewart."

Upon the execution of these documents all notes and mortgages held by the grantees were surrendered to the mortgagors.

Does this transaction to which the junior mortgagee was not a party, and whose position as holder of the statutory right of redemption was in no way prejudiced, operate to extinguish the third mortgage as a lawful charge upon the property, or should such transaction be treated in equity merely as a personal release of the mortgagors, leaving the status unchanged as to complainant's right of redemption? Manifestly, if the balance on this third mortgage had been paid off by the mortgagors, it would no longer be a lawful charge. The purchasers would no longer have their money in the land. Hence no lien to secure it. The same result would follow, if there had been a bona fide controversy as to the amount due on this third mortgage, and the parties had compromised and settled such controversy, followed by payment, or other form of satisfaction.

Neither the written memorials of the transaction, nor other averments of the bill disclose there was any such bona fide controversy. Indeed the writings nowhere mention this mortgage, nor otherwise show it was in mind, other than by the general release of the debtors from all demands.

Looking at realities, it does not appear the mortgagors paid anything. The money payments were made, and the obligation to pay was by the grantees. The taxes $197.28, the past due installment on the bank mortgage, $87.28, and the assumption of that mortgage were all by the grantees. The nominal sum of $1 is the sole moneyed consideration recited to have been paid by the mortgagors for the compromise, settlement and release of the mortgagors. True, the sums paid by the grantees, were burdens that would have fallen upon them as purchasers at the foreclosure sale, but they were primarily debts of the mortgagor. The real benefit derived by the grantees was a surrender or assignment of the mortgagor's statutory right of redemption. In view of the facts, the expression "compromise and settle" was rather formal than real.

In Fouche v. Swain, 80 Ala. 151, the senior mortgagee had purchased the interest of the mortgagor before foreclosure. The junior mortgagee, alleging this was a satisfaction of the senior mortgage, sought a decree giving priority to the junior mortgage.

Said the court: "It may be conceded this deed did not affect the rights of complainant, as acquired by the transfer to him of the Cothran trust deed, because Prior could convey no better title than what he owned. No more did it affect the prior mortgage and superior title of Mrs. Swain. It may have satisfied it as between her and Prior, just as the successful prosecution of the foreclosure suit would have done. But as to any junior incumbrancer, her superior equity would still be preserved in its full force and vitality. There would be but a poor show of logic in holding that this strengthening of her title by Mrs. Swain, has, after all, but served to weaken it. It is common practice for courts of chancery to keep alive equitable liens and incumbrances

as against strangers or third parties. Equity could often be but badly administered without it."

In Dennis v. McEntire Mercantile Co., 187 Ala. 314, 65 So. 774, the senior mortgagee had taken a deed in satisfaction of the mortgage debt in lieu of foreclosure and entered satisfaction of the mortgage debt. The junior mortgagee claimed priority for his mortgage. Said the court:

"In the case before us the debt due complainant was satisfied by a deed taken in lieu of formal foreclosure, not otherwise. The deed operated as a satisfaction and extinguishment of the debt secured by the mortgage; but its effect upon complainant's interest in the land was, not to destroy the legal title vested in him by the mortgage and defendant's default, nor to create a new and independent title by way of substitution, but simply to vest in complainant defendant's equity of redemption and strip the latter of all his remaining interest in the land, thus uniting in complainant the titles of mortgagor and mortgagee as in a stranger purchasing at a foreclosure sale."

The taking of a deed by the senior mortgagee in lieu of foreclosure is subject to the right of redemption in a junior mortgagee within the two year period. A. M. Robinson Co. v. Anniston Land Co., 217 Ala. 648, 117 So. 29.

These cases, relied upon by appellee, involved priorities, as suggested by appellant.

The principles asserted in that regard are obviously sound.

When the senior mortgagee takes a deed in lieu of foreclosure, his money is still in the land. He strengthens his position as to the mortgagor, leaving the junior mortgagee unhurt.

But the cases go further. They recognize the power of a court of equity to keep alive incumbrances as against third persons, in the interest of justice, although, as between the immediate parties, they have ceased to exist, and the evidences thereof conceded or surrendered. Other applications of this principle may readily be recalled. 33 Am.Jur. 438, § 38.

The money of appellees secured by the third mortgage is still in the lands.

Acts or transactions reasonably consistent with one's own interest are not to be construed to intend his own hurt. Our conclusion is the priority of these mortgage liens remains the same as when complainant's mortgage was taken, and as they stood at the time of foreclosure. This is the equity of the case made by the bill. The decree on demurrer so held.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.