720 So.2d 873 (1998)
SOUTHEAST ENTERPRISES, INC.
v.
Jerry H. BYRD, et al.
1960484.
Supreme Court of Alabama.
February 13, 1998.
Rehearing Denied August 21, 1998.
Robert H. Brogden, Ozark, for appellant.
James R. Fuqua and Bill Kominos of Fuqua & Kominos, Ozark, for appellees.
SEE, Justice.
Southeast Enterprises, Inc. ("SEI"), a junior mortgagee, sought to redeem a tract of real property from Jerry and Sharron Byrd, who had purchased the property at a foreclosure sale. In computing the redemption price to be paid by SEI, the trial court began *874 with the purchase price the Byrds had paid; then it (1) added the balance of an outstanding higher-priority mortgage; (2) computed interest on the entire redemption price at the rate of 12%; (3) added permanent improvements made by the Byrdsat cost, instead of value; and (4) denied SEI any credit for the post-redemption rental value of the property or for timber cut by the Byrds. We affirm the trial court's inclusion of the higher-priority mortgage in the redemption price; reverse its computation of interest, its valuation of the permanent improvements, and its denial of credits for timber and rent; and remand.
The real estate consists of over 800 acres of farmland that was at one time owned by Hubert Prestwood, Jr., subject to a first mortgage held by the Farmers Home Administration ("FmHA"), second mortgages held by Hubert Prestwood, Sr., and India Prestwood, and two judgment liens. When FmHA foreclosed, the debt on the property exceeded $1 million. The Byrds purchased the property at a foreclosure sale for $480,000, paying $79,000 from their own funds and $401,000 obtained from a note secured by a mortgage to Colonial Bank.
SEI acquired assignments of at least one second mortgage and one or more judgment liens, thus obtaining a statutory right to redeem the property from the Byrds. See Ala.Code 1975, § 6-5-248. SEI gave notice of redemption to the Byrds and demanded a written statement of the debt and all lawful charges claimed by the Byrds. See Ala.Code 1975, § 6-5-252. The Byrds provided SEI with the written statement, listing numerous lawful charges.
In October 1995, SEI filed a complaint seeking redemption, contesting several of the charges listed on the Byrds' statement. The trial court entered a judgment on September 13, 1996, computing the redemption price as follows:

Purchase price paid by the Byrds
 (including interest at 12%) $ 593,218.15
FmHA mortgage balance
 (including interest at 12%) 592,986.77
Permanent improvements,
 taxes, etc., at cost 102,972.62
Credits for timber and rent ( -0- )
 _____________
Total redemption price $1,289,177.54
 =============

SEI moved for a new trial. The trial court denied its motion, and SEI appealed.[1]

I. Balance of Higher-Priority Mortgage

SEI first contends that it is not required to include in the redemption price the higher-priority mortgage owned by FmHA. Specifically, SEI argues that Ala.Code 1975, § 6-5-253, does not require it to pay a higher-priority mortgage that is not owned by the purchasers at the foreclosure sale, the Byrds. See St. Clair Indus., Inc. v. Harmon's Pipe & Fitting Co., 282 Ala. 466, 213 So.2d 201 (1968); Fonde v. Lins, 259 Ala. 553, 67 So.2d 834 (1953); Stewart v. Stephenson, 243 Ala. 329, 10 So.2d 159 (1942); Estes v. Johnson, 234 Ala. 191, 174 So. 632 (1937). We disagree.
After real property is sold at a foreclosure sale to pay the encumbrances on it, various parties may redeem that property from the purchaser by paying the appropriate redemption price. Ala.Code 1975, § 6-5-248. The redemption price includes taxes, the value of improvements, and certain outstanding encumbrances. Ala.Code 1975, § 6-5-253. The cases cited by SEI[2] interpreted the language of former § 6-5-235:

*875 "(3) Any other valid lien or incumbrance paid or owned by such purchaser or his vendee, or any mortgagee of the purchaser to the extent of the amount necessary to redeem."
(Emphasis added.) This language plainly required the redeeming party to pay only those encumbrances "paid or owned" by the purchaser.
In 1988, however, the Legislature repealed § 6-5-235 and replaced it with § 6-5-253, which, in subsection (a), provides that the redemption price now includes:
"(4) Any other valid lien or encumbrance paid or owned by such purchaser or his or her transferee or if the redeeming party is a judgment creditor or junior mortgagee or any transferee thereof, then all recorded judgments, recorded mortgages and recorded liens having a higher priority in existence at the time of sale which are revived under Section 6-5-248(c)."
(Emphasis added.) See Ala. Acts 1998, Act No. 88-441, § 7, p. 647; see also Harry Cohen, The Statutory Right of Redemption in Alabama: A New Statute Is on the Horizon, 39 Ala. L.Rev. 131 (1987) (discussing the then-proposed bill that was later adopted as Act No. 88-441). Unlike its predecessor, § 6-5-253(a)(4) divides encumbrances into two categories: (1) those encumbrances "paid or owned" by the purchaser; and (2) all encumbrances of higher priority. The change in language effected by the 1988 amendment reflects the Legislature's intent to change the computation of the statutory redemption price from that described in St. Clair Indus., Fonde, Stewart, and Estes, supra. The change added to the redemption price paid by junior creditors "all" higher-priority encumbrances, whether or not they are owned by the purchaser. See Ex parte Sizemore, 605 So.2d 1221, 1227 (Ala.1992) ("Having examined the statute [as it read both before and after] the 1986 amendment, we conclude that the legislature could not have been merely reiterating the law as it existed [before the amendment] without meaning to change the interpretations given to the [preamendment statute.]").
The change effected by § 6-5-253(a)(4)'s inclusion of "all" higher-priority encumbrances in the redemption price was clearly intended to prevent financial windfalls to junior creditors. See City of Birmingham v. Hendrix, 257 Ala. 300, 307, 58 So.2d 626, 633-34 (1952) (stating that a court may ascertain the intent of a statute or of a provision therein by looking to the law as it existed before the statute was enacted). By requiring the redeeming creditor to pay off the first mortgage, § 6-5-253(a)(4) prevents SEI, the junior creditor, from vaulting over the holder of the first mortgage, FmHA, to become the possessor of the property. Thus, under § 6-5-253(a)(4), the second mortgagee cannot obtain an interest in the collateral that is superior to that of the first mortgagee without compensating the first mortgagee for the first mortgagee's interest.[3] The trial court correctly included the higher-priority mortgage in the redemption price.

II. Interest

SEI makes two arguments regarding the 12% interest rate used by the trial court with respect to the purchase price and the FmHA mortgage: First, SEI cites Durr Drug Co. v. Acree, 241 Ala. 391, 2 So.2d 903 (1941), for the proposition that the trial court *876 should have applied a 12% interest rate to the $79,000 portion of the Byrds' purchase price that they funded with their own cash, for the period beginning at the date of the foreclosure sale and ending at the filing of the complaint for redemption, and a 6% rate thereafter. Second, SEI cites Lytle v. Robertson, 233 Ala. 161, 170 So. 484 (1936), for the proposition that the trial court should have applied the contract rate of interest, instead of the 12% fixed legal rate, to the $401,000 portion of the redemption price that the Byrds had borrowed and to the $476,698.71 balance due on the note secured by the FmHA mortgage.
SEI's reliance on Durr Drug for the proposition that one interest rate should be applied for the period before the filing of the complaint and another for the period thereafter is misplaced. In Durr Drug, this Court interpreted a redemption statute materially different from § 6-5-253(a). That earlier redemption statute provided for a 10% statutory rate of interest on the purchase price for the period up until tender or the filing of the complaint for redemption, and it provided for the legal rate (namely, 6% or the contract rate) to apply to any unpaid portion of the purchase pricea "lawful charge"for the period thereafter. See Ala.Code 1923, § 10145;[4] § 8563 (providing a fixed legal rate of interest of 6% for noncontract debts and a contract rate for contract debts); Morrison v. Formby, 191 Ala. 104, 108, 67 So. 668, 669 (1914) (stating that the filing of a complaint for redemption is equivalent to a tender of the purchase price); Gay v. Taylor, 214 Ala. 659, 660, 108 So. 853, 854 (1926) (the term "lawful charges" includes any balance due at final judgment).
Unlike its statutory predecessor, § 6-5-253(a) does not provide two different interest rates for the purchase price and the lawful charges:
"Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10 (as it is now or hereinafter [sic] may be amended), and all other lawful charges, also with interest as aforesaid ...."
(Emphasis added.) See Ala.Code 1975, § 8-8-10 (providing a 12% rate on noncontract debts and a contract rate on contract debts). Thus, the trial court correctly refused to drop the post-complaint interest rate to the 6% rate applicable to lawful charges under prior law.
SEI's reliance on Lytle, however, to support an application of the lower contract rate of interest to the portion of the redemption price derived from notes with contract rates of interest is well founded. Lytle interpreted a statute not materially different from the currently applicable § 8-8-10. See Lytle, 233 Ala. at 164, 170 So. at 486 ("In this state, one seeking redemption from under a mortgage must pay legal interest, or the rate fixed by the contract if it be less than the legal rate."). Lytle dealt with Ala.Code 1923, § 8563, which provided that the "legal rate of interest" was either the rate provided by a contract, or, if there was no contract rate, a 6% fixed rate.[5] Thus, if a portion of the redemption price is composed of a debt for which the interest rate is fixed by contract (e.g., a note), the contract rate would apply in lieu of the fixed legal rate. Similarly, § 8-8-10, to which § 6-5-253(a) refers, provides:
"Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the *877 cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum...."
(Emphasis added.) This language provides for application of the contract rate or, if there is no contract rate, a fixed rate. When used to compute a redemption price, § 8-8-10, like former § 8563, prevents windfalls by providing mortgagees only the amount of interest they contracted for with the mortgagor, not a higher fixed rate. Without clear direction from the Legislature, we will not provide a bonus of interest in excess of that contracted for by the mortgagees. On remand, the trial court should apply the contract rate of interest, not the 12% rate, to those portions of the redemption price composed of debts for which the interest rate is set by contract.[6]

III. Permanent Improvements

SEI further argues that the trial court erred in determining the amount it would have to pay for permanent improvements under § 6-5-253(a)(1). Citing Wallace v. Beasley, 439 So.2d 133 (Ala.1983), SEI contends that the trial court erred by simply accepting the Byrds' cost estimates for various permanent improvement projects without determining the reasonable value of those improvements. The Byrds responded by asserting that the ore tenus standard requires this Court to affirm the trial court's ruling unless that ruling was plainly and palpably wrong.
The ore tenus standard of review is not applicable where a trial court has misapplied the law to the facts. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994). The law of Alabama provides that it is the reasonable value of the permanent improvements to the land, not their cost, that must be paid by the redeeming party. Ala.Code 1975, § 6-5-254(a); Wallace, 439 So.2d at 135-36; Ladd v. Parmer, 278 Ala. 435, 178 So.2d 829 (Ala. 1965); Durr Drug, 241 Ala. at 395, 2 So.2d at 906. The record indicates that the trial court did not obtain evidence of the reasonable value of the permanent improvements, and thus misapplied the law to the facts by including in the redemption price the cost of the permanent improvements instead of their reasonable value.[7] On remand, the trial court should assess each permanent improvement and include the reasonable value thereof in the redemption price.

IV. Credit for Rents and Timber Cut

SEI also argues that the trial court erred in not giving it credit against the cost of redemption for the rental value of the land after the date of its complaint for redemption, and in not giving it credit for timber that the Byrds cut. With respect to the rental value of the land, § 6-5-253(c) provides:
"The purchaser shall be entitled to all rents paid or accrued including oil and gas or mineral agreement rentals to the date of the redemption, and the rents must be prorated to such date. The purchaser or his or her transferee and his or her tenants shall have the right to harvest and gather the crops grown by them on the place for the year in which the redemption is made, but must pay a reasonable rent for the lands for the proportion of the current year to which such redemptioner may be entitled."

(Emphasis added.) The record indicates that the Byrds grew and harvested crops on the *878 property after the date on which the complaint for redemption was filed. See Dicie v. Morris, 285 Ala. 650, 654, 235 So.2d 796, 798 (1970) (stating that the date the complaint for redemption was filed serves as the date of redemption). The Byrds had the right to grow and harvest those crops, but § 6-5-253(c) requires that they pay SEI a reasonable rent for the use of the land for the time after the date of redemption.[8] Thus, the trial court erred to the extent it did not provide SEI a credit against the redemption price for the post-redemption rental value of the land.
SEI also presented evidence that the Byrds cut and sold some amount of timber in July 1995 and that they destroyed other timber while clearing a portion of the land for farming. Section 6-5-253 provides, in pertinent part:
"(d) [Anyone] entitled and desiring to redeem shall be granted a credit as against the amount of money required to be paid for redemption as follows:
"(1) For all timber cut or sold on the land by the purchaser or his or her transferees, during the statutory period of redemption."
(Emphasis added). Because all the timber, whether sold or destroyed, was cut, or otherwise removed from the land, "during the statutory period of redemption," SEI was entitled to a credit therefor under § 6-5-253(d)(1). The trial court erred to the extent it failed to determine the value of the timber the Byrds cut and to give SEI a credit for that sum against the redemption price.
In sum, we deny the motion to dismiss the appeal; we affirm that portion of the trial court's judgment that included the higher-priority mortgage in the redemption price; we reverse those portions of the judgment computing interest, valuing permanent improvements at cost and not granting credit for rental value and timber cut or destroyed; and we remand this cause for further proceedings consistent with this opinion.
MOTION TO DISMISS APPEAL DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, and KENNEDY, JJ., concur.
BUTTS, J., concurs in part and dissents in part.
BUTTS, Justice (concurring in part and dissenting in part).
I concur with much of the majority opinion; however, I dissent from the majority's affirmance of the circuit court's ruling that in order to redeem the property at issue SEI must pay the deficiency balance remaining on the FmHA mortgage. I believe the majority has interpreted Ala.Code 1975, § 6-5-253(a)(4), incorrectly. Section 6-5-253 states, in relevant part:
"(a) Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10 (as it is now or hereinafter [sic] may be amended), and all other lawful charges, also with interest as aforesaid; lawful charges are the following:

"....
"(4) Any other valid lien or encumbrance paid or owned by such purchaser or his or her transferee or if the redeeming party is a judgment creditor or junior mortgagee or any transferee thereof, then all recorded judgments, recorded mortgages and recorded liens having a higher priority in existence at the time of sale which are revived under Section 6-5-248(c).

"If the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, the redemptioner must also *879 pay any balance due on the debt, with interest as aforesaid thereon to date."

(Emphasis added.)
This Court has not previously answered the question whether § 6-5-253(a)(4) requires that when the person seeking redemption is a "judgment creditor or junior mortgagee or any transferee thereof," that person must in every case pay the deficiency balance remaining on any recorded judgments, mortgages, or liens having a higher priority.
In construing § -253(a)(4), this Court, as it is in regard to any other statute, is required to keep in mind the first rule of statutory construction, that the intent of the legislature should be given effect. Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala. 1994); Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994). The intent of the Legislature can be gleaned from the language of the statute, the reason and necessity for the act, and the goals sought to be obtained. Hines v. Riverside Chevrolet-Olds; McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417 (Ala.1992). Although the second part of the first sentence of § -253(a)(4) contains additional language not found in the statutory predecessors in the 1923 and 1940 Codes or in the 1958 recompilation, the Legislature's intent has always been for the redeeming party to have to pay the purchaser at the foreclosure sale only for those valid liens or encumbrances paid or owned by the purchaser. See St. Clair Indus., Inc. v. Harmon's Pipe & Fitting Co., 282 Ala. 466, 213 So.2d 201 (1968); Fonde v. Lins, 259 Ala. 553, 67 So.2d 834 (1953); Stewart v. Stephenson, 243 Ala. 329, 10 So.2d 159 (1942); Estes v. Johnson, 234 Ala. 191, 174 So. 632 (1937).
I find no indication that in regard to the long-standing rule the Legislature intended to create an exception relating only to redemptioners who are judgment creditors or junior mortgagees and to require them to pay all judgments, liens, and mortgages with superior priority regardless of whether the foreclosure sale purchaser owns them or not. In interpreting § -253(a)(4), the majority has drastically changed the law regarding the redemption of real estate. The comment to § -253 evidences no such intent by the Legislature to change the law; rather, the comment indicates that the meaning of § -253(a)(4) was not changed.
The majority believes that the Legislature intended to provide protection to lienholders who have a higher priority than the redeeming junior creditor, lienholder, or mortgagee. However, no such protection is necessary. A higher priority lienholder has always had the right to purchase the property at the foreclosure sale. Thereafter, any redemptioner would have to pay the entire amount of the lien, because the lien is owned by the purchaser at the foreclosure sale and the purchaser owned the debt for which the property was sold. Section -253(a)(4). FmHA simply failed to exercise that right in this case.
I believe the language the Legislature added to § -253 was intended to offer protection to junior creditors, lienholders, and mortgagees so that they are not required to pay inferior judgments, liens, or mortgages owned by the purchaser in order to redeem the property. After thoroughly studying § -253(a)(4), I believe that the Legislature's intent was to require a redeeming party to pay as a lawful charge only those valid liens or encumbrances owned by the party who had purchased the property at the foreclosure sale. In other words, the wording in (4) beginning with "or if" is merely a limitation on the preceding portion of (4). Section -253(a)(4) states that a person redeeming a property must pay any other valid lien or encumbrance paid or owned by the purchaser, but, if the redeeming party is a judgment creditor or a second mortgagee, then he or she would only have to pay liens and encumbrances paid or owned by the purchaser that have a higher priority than his or her lien. Section -253(a)(4) should be interpreted to give effect to the intent of the Legislature, which has always been to protect judgment creditors and junior mortgagees rather than to punish them and give them fewer rights than strangers to the property, such as the Byrds, who purchase the property at the foreclosure sale and leave a deficiency on the lien for which the property was sold.
In an unpublished opinion, In re Shields v. Federal Nat'l Mortgage Ass'n, (No. 92-0451, December 14, 1996, S.D.Ala.1996), a federal *880 district court reached the same conclusion that I reach now. Although this Court is not bound by that court's interpretation of the Alabama statute, that court's reasoning supports the conclusion that § -253(a)(4) has not changed Alabama redemption law. The facts of Shields are different from those of this case only in that the party who bought the property at the foreclosure sale was the mortgagee and not a stranger to the property, like the Byrds. However, the district court's analysis of § -253(a)(4) is highly relevant. The court stated:
"Statutory redemption is governed by the Code of Alabama 1975, Section 6-5-253, which provides that the redemptioner shall pay (1) permanent improvements, (2) taxes, (3) all insurance premiums paid since the foreclosure, (4) certain liens on the property, and, where the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, the redemptioner must also pay the balance due on the debt, with interest at the statutory money judgment rate to date.

"The portion of the Statute relating to redemption from the person who owned the debt distinguishes between the situation in which the mortgagee bought ... the property at the foreclosure sale and the situation in which a stranger purchased the property. In the present case, the mortgagee bid in the property for the amount due on the debt, which was $31,793.70. Thus the redemptioner must pay $31,793.70, plus interest and legal charges. If the property had been purchased by a stranger for $25,000.00 at the foreclosure auction sale, the redemptioner would have had to pay only $25,000 plus interest and legal charges.

"Federal National Mortgage Association was the owner of the debt at the time of the foreclosure and still is. The redemption would be made from FNMA and not from some third party who might have purchased at the foreclosure sale. Hence, the full debt must be paid."
As illustrated in its example, the federal district court recognized that where the purchaser of the property at the foreclosure sale is a stranger to the property, § -253(a)(4) requires only that a redemptioner pay the purchaser the purchase price and does not require that the redemptioner pay any deficiency balance on the debt for which the property was sold.
In sum, I would hold that because the Byrds have not paid, and do not own the FmHA mortgage, which is the higher-priority lien at issue, the junior lienholderSEI is not required to pay the deficiency balance on that lien and may redeem the property from the Byrds for the price the Byrds paid at the foreclosure sale, plus other legal charges and interest.
NOTES
[1] The Byrds have moved to dismiss SEI's appeal, contending that SEI's December 23, 1996, notice of appeal was not timely because it was not filed within 42 days of the trial court's September 13 judgment. SEI contends that its notice of appeal was timely filed, because, it says, the 42-day period was suspended by its filing of a motion for a new trial. The Byrds respond with the argument that SEI's motion for a new trial did not suspend the running of the 42-day period for filing an appeal because the motion for new trial was itself untimely. Rule 59(b), Ala. R. Civ. P., provides 30 days for filing a motion for a new trial. SEI filed its motion on the 32nd day after the September 13 judgment; however, the 30th day after the judgment, October 13, was a Sunday, and the 31st day, October 14, was a state holiday. See Rule 6(a), Ala. R. Civ. P. Accordingly, SEI's motion for a new trial was timely, and it thus suspended the running of the 42-day period for filing a notice of appeal. The 42-day period did not begin to run anew until the trial court denied SEI's motion for a new trial on November 22. Rule 4(a)(3), Ala. R.App. P. Thus, SEI's December 23 notice of appeal was timely filed. Rule 4(a)(1), Ala. R.App. P.
[2] Each of these cases interpreted the language of a statutory predecessor of § 6-5-235. St. Clair Indus., Fonde, and Stewart interpreted Title 7, § 732, Code of Alabama 1940, which provided that the redemption price included:

"3. Any other valid lien or incumbrance paid or owned by such purchaser or his vendee, or any mortgagee of the purchaser to the extent of the amount necessary to redeem."
Estes interpreted § 10145(3), Code of Alabama 1923, which used the same language.
[3] This interpretation is supported by § 6-5-253(a)(4)'s express reference to § 6-5-248(c) in computing the redemption price. Section 6-5-248(c) provides in pertinent part:

"When any judgment creditor or junior mortgagee or any transferee of a judgment creditor or a junior mortgagee redeems under this article, all recorded judgments, recorded mortgages and recorded liens having a higher recorded priority in existence at the time of the sale are revived against the real estate redeemed and against the redeeming party and such shall become lawful charges pursuant to Section 6-5-253(a)(4) to be paid off at redemption."
(Emphasis added.) Nowhere in § 6-5-248(c) is there any qualification that would suggest the Legislature intended to limit the redemption price payable by junior mortgagees only to those higher-priority encumbrances "paid or owned" by the purchaser.
[4] Ala.Code 1923, § 10145, provided:

"Any one entitled and desiring to redeem real estate under the provisions of this chapter must also pay or tender to the purchaser or his vendee the purchase money, with interest at the rate of ten per cent per annum thereon, and all other lawful charges, with legal interest ...."
(Emphasis added.)
[5] Ala.Code 1923, § 8563, as amended in 1935, provided:

"The rate of interest upon the loan or forbearance of money, goods or things in action, except by written contract, is six dollars upon one hundred dollars for one year, and the rate of interest by written contract is not to exceed eight dollars upon one hundred dollars for one year; and at the rate for a greater or less sum, or for a longer or shorter time."
[6] Neither of the parties has argued that interest should have been added to any items other than the notes secured by the Colonial Bank mortgage and by the FmHA mortgage.
[7] SEI also contends that the trial court erred by accepting as permanent improvements certain projects that related to the Byrds' planting of crops that the Byrds profited from by later harvesting. Because the trial court's order does not specify which items it accepted as permanent improvements, we cannot determine whether the court erred. On remand, the trial court should review the list of proposed permanent improvements, including the evidence supporting the cost estimates and asserted values thereof, and the evidence contesting the estimates and values, and specify in its order which it accepts for inclusion in the redemption price and the value assigned to each. See Moore v. Horton, 491 So.2d 921, 923 (Ala.1986); Durr Drug Co. v. Acree, 241 Ala. 391, 395, 2 So.2d 903, 906 (1941); Rodgers v. Dixon, 239 Ala. 72, 74-75, 193 So. 741, 743-44 (1940).
[8] For the following year, SEI, as a redemptioner, is entitled to any profits accrued from the use of the land. See § 6-5-253(c).