This case, which involves the redemption of certain real property, has previously been before this Court. See Southeast Enters., Inc. v. Byrd,720 So.2d 873 (Ala. 1998).
These appeals are by Jerry H. Byrd and Sharon B. Byrd. In 1994, the Byrds purchased real property at a foreclosure sale. In 1995, Southeast Enterprises, Inc. ("SEI"), a junior mortgagee, sought to exercise its statutory right to redeem the property. (That led to case no. CV-95-92 in the Coffee Circuit Court.) In September 1996, the trial court issued an order computing the total redemption price at $1,289,177.54. SEI appealed to this Court.
In June 1997, while SEI's appeal was pending before this Court, SEI filed, pursuant to Rule 60(b), Ala.R.Civ.P., an "Independent Action for Relief of Judgment Resulting from Fraud on the Court." (This "independent action" was case no. CV-97-127.)
On February 13, 1998, this Court issued its opinion in SEI's appeal.See Southeast Enters., Inc., supra. This Court affirmed in part, reversed in part, and remanded. In its opinion, this Court stated:
 "In sum, we deny the motion to dismiss the appeal; we affirm that portion of the trial court's judgment that included the higher-priority mortgage in the redemption price; we reverse those portions of the judgment computing interest, valuing permanent improvements at cost and not granting credit for rental value and timber cut or destroyed; and we remand this cause for further proceedings consistent with this opinion."
720 So.2d at 878. On remand, the Byrds requested that the trial court schedule a hearing to determine the redemption price to be paid by SEI. The trial court issued an order consolidating CV-95-92 and CV-97-127, on motion by SEI.
After conducting a hearing, the trial court found that a fraud had been perpetrated on the court by Farmers Home Administration ("FmHA") and the Byrds and issued an order setting aside its prior judgment. This order permitted SEI to redeem the property by paying $206,962, plus interest, within 60 days from April 20, 2000.
On May 19, 2000, the Byrds filed a motion to alter, amend, or vacate the judgment and a motion to stay enforcement of the judgment and to set a supersedeas bond. The court set July 28, 2000, as the hearing date for these motions.
On June 28, 2000, the court issued two orders — one directing that the funds be placed in a certificate of deposit pending resolution of this case and one approving the payment of the redemption price and directing the issuance of a deed.
On July 3, 2000, the Byrds moved to vacate the June 28, 2000, order and deed, contending that the trial court had inadvertently overlooked the pending motion to *Page 268 
stay enforcement of the judgment and to set a supersedeas bond. The Byrds also requested that the trial court enter an order staying the execution of the judgment pending appeal. On July 5, 2000, the Byrds filed with this Court a petition for a writ of mandamus, requesting this Court to direct the trial court to vacate its orders of April 20, 2000, and June 28, 2000, and to enter an order in compliance with this Court's prior mandates as set forth in Southeast Enters.,Inc., 720 So.2d 873. The petition for a writ of mandamus was dismissed on September 13, 2000, on the Byrds' motion. On July 7, 2000, the trial court directed that the April 20, 2000, judgment be stayed upon the Byrds' posting a supersedeas bond in the amount of $22,429.21. On July 14, 2000, the Byrds filed a supersedeas bond in that amount.
On July 29, 2000, the trial court heard argument on the motion to alter, amend, or vacate the judgment, and on August 15, 2000, it denied the motion. These appeals followed.[1]
The Byrds contend that SEI had lost its right to redeem the property by failing either to post a supersedeas bond or otherwise to obtain a stay of the September 13, 1996 order,[2] pending the prior appeal. We have reviewed the record from the prior appeal, and we find that this was one of the issues the Byrds raised in their motion to dismiss that appeal. However, this Court denied the Byrds' motion to dismiss the appeal.[3]Southeast Enters., Inc., 720 So.2d at 878. As this Court stated in TitanIndemnity Co. v. Riley, 679 So.2d 701, 705 (Ala. 1996):
 "`Under the doctrine of the "law of the case," whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.'"
(Citations omitted.) Thus, applying the doctrine of "law of the case," we conclude *Page 269 
that SEI has not lost its right to redeem this property.
The Byrds also contend that SEI's "Independent Action for Relief of Judgment Resulting from Fraud on the Court" was untimely filed, and, thus, that the April 20, 2000, order is due to be vacated. As previously noted, in September 1996 the trial court issued its judgment, and in June 1997 SEI filed its "independent action," alleging fraud upon the court.[4]
Rule 60(b), Ala.R.Civ.P., states, "This rule does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three (3) years after the entry of the judgment . . . to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." In light of the foregoing, we conclude that SEI's "independent action" was not untimely filed and that it was the appropriate means for SEI to use. See Brice v. Brice,340 So.2d 792, 794-95 (Ala. 1976).
The following facts create the basis for SEI's "independent action": Section 6-5-253(d)(1), Ala. Code 1975, requires the Byrds to give SEI credit for "all timber cut or sold" on the property during the statutory period of redemption;[5] the Byrds purchased the property at a foreclosure sale conducted on September 1, 1994; on April 14, 1995, the Byrds executed a contract, selling the timber on the property to Pea River Timber Company, Inc., for $170,000;[6] the Byrds on August 25, 1995, *Page 270 
furnished SEI with a list of lawful charges, wherein the Byrds gave SEI a credit of $3,013.02 for timber cut by Pea River Timber Company, Inc., in July 1995; the Byrds never advised either SEI or the trial court about the April 14, 1995, timber sale and the receipt of $170,000; and the trial court used the August 25, 1995, list of lawful charges to calculate the redemption price to be paid by SEI.[7]
At the July 19, 1999, hearing, Jerry Byrd testified that he felt no obligation under the redemption statute to volunteer information either to SEI or to the trial court regarding the April 14, 1995, contract with Pea River Timber Company, Inc.; the $170,000 he received from Pea River Timber Company, Inc., in April 1995; or the $75,000 ($50,000 of which applied to the property subject to redemption) he received in January 1997, because, he said, the April 14, 1995, contract had been recorded and was a matter of public record, and the contract stated that he was to repay the money if the timber could not be harvested because of the redemption of the property. The court's April 20, 2000, order stated:
 "The Court also considered with great weight the testimony of the Defendant, Jerry Byrd, wherein he [said] he had no obligation to volunteer any information concerning the sale of timber on the lands made the basis of this suit. He also testified he had no duty to advise as to the receipt of the [$170,000] incident to said conveyance.
 "This Court is convinced [that] state law has not been complied with as a result of fraud on this Court. Parties to a redemption action ARE without question UNDER A DUTY/AN OBLIGATION to divulge pertinent/VERY MATERIAL information to the redeeming party AND more importantly, TO THE COURT.
"Neither was done in the instant case. . . .
 "The [Byrds] committed a fraud on THIS COURT by asking THIS COURT to incorporate into its decree the omission of the [$170,000] credit due [SEI].
 "IT IS THEREFORE ORDERED that this Court's prior judgments are hereby set aside and held for naught . . . for fraud on the Court."
In their brief filed with this Court in these present appeals, the Byrds admit that, pursuant to § 6-5-253(d)(1), Ala. Code 1975, SEI is entitled to a credit of $230,500 against the redemption price for timber cut or sold during the statutory period of redemption.[8] In their brief, the Byrds argue that the trial court should not have set aside its prior judgment because, they say, under Alabama law, SEI was deemed to have constructive knowledge of the April 14, 1995, contract, which had been recorded. However, this does not excuse the Byrds' failure to inform the trial court of the April 1995 contract and the $170,000 advance from Pea River Timber Company. Thus, we find that the evidence supports the trial court's finding *Page 271 
in its April 20, 2000, order that the Byrds had committed a fraud upon the court in procuring the September 13, 1996, judgment.
In the prior appeal, SEI contended that "it [was] not required to include in the redemption price the higher-priority mortgage owned by FmHA." 720 So.2d at 874. This Court determined that "[t]he trial court correctly included the higher-priority mortgage in the redemption price" because "under § 6-5-253(a)(4), the second mortgagee [SEI] cannot obtain an interest in the collateral that is superior to that of the first mortgagee [FmHA] without compensating the first mortgagee for the first mortgagee's interest." 720 So.2d at 875.
In Titan Indemnity Co., supra, this Court, quoting Gray v. Reynolds,553 So.2d 79, 81 (Ala. 1989), stated:
 "`It is well established that on remand the issues decided by an appellate court become the "law of the case," and that the trial court must comply with the appellate court's mandate. The trial court's duty is to comply with the mandate "according to its true intent and meaning," as determined by the directions given by the reviewing court.'"
(Citations omitted.)
In its April 20, 2000, order, the trial court found that FmHA had committed a fraud on the court, and it set aside the September 13, 1996, judgment entered in favor of FmHA. The trial court clearly recognized that it was not following the mandates set forth in SoutheastEnterprises, Inc., 720 So.2d 873, because it stated the following in its April 20, 2000, order:
 "As to the argument that such an order as this would conflict with the already-rendered opinion of the Alabama Supreme Court, this trial court is convinced that other decisions of our state Supreme Court are more in point with the action taken herein by the trial court. A revisit is demanded and due as redemption procedures are governed by statute where erroneous calculations — created intentionally through a fraud on the court — MUST BE CORRECTED FOR THE SAKE OF JUSTICE."
The apparent basis for the trial court's finding that FmHA committed a fraud on the court is this rationale: (1) that this debt was time-barred by state and federal statutes; (2) that the preamendment statute (§§6-5-230 through 6-5-246, Ala. Code 1975, which was repealed effective January 1, 1989) applied in this case and did not allow FmHA's claim; (3) that the debt had been discharged in bankruptcy; (4) that FmHA's claim had not been verified; (5) that FmHA has waived or abandoned any right to the unpaid deficiency balance in this case because it was not a party to the action and it had failed to participate in discovery and the trial of this case; and (6) that because FmHA had acquiesced in the accumulation of the enormous debt, its claim was barred by the doctrine of laches.
After reviewing the record in the prior appeal and researching the law on these issues, we make the following observations as to the basis for the trial court's finding that FmHA had committed a fraud on the court: (1) In April 1978, Hubert "Butch" Prestwood, Jr., and his wife, Mary Prestwood, executed three promissory notes and a mortgage on the property subject to redemption. SEI contends that the Prestwoods defaulted in 1980.[9] FmHA *Page 272 
foreclosed on the mortgage on September 1, 1994.
 "Though recovery on the note is barred by a statute of limitation, the running of such statute on the note does not prevent foreclosure of the mortgage given as security therefor. There is no statute of limitation on the foreclosure of a mortgage. It is only when the mortgage debt has been due after maturity for a time sufficient to raise a presumption that the same has been satisfied that mere delay will furnish a defense to foreclosure. That time is ordinarily twenty years."
Williamson v. Shoults, 423 So.2d 874, 877 (Ala.Civ.App. 1982). Thus, FmHA's higher-priority mortgage was not time-barred. (2) Section6-5-257, Ala. Code 1975, states: "This article applies only to mortgages foreclosed after January 1, 1989." As previously noted, the mortgage foreclosure occurred on September 1, 1994. Thus, the preamendment statute does not apply in this case, and under Ala. Code 1975, §6-5-253(a)(4), FmHA's higher-priority mortgage was correctly included in the redemption price. (3) The fact that the Prestwoods had filed bankruptcy petitions in 1994 and had been discharged in 1995 was presented to both the trial court and this Court in the prior appeal. (4) A representative for FmHA testified at the May 28, 1996, hearing concerning the amount of FmHA's claim. After this hearing, the trial court issued an order stating that the parties could submit briefs addressing the issue whether FmHA's higher-priority mortgage could be a lawful charge upon redemption of the property. Both FmHA and SEI submitted briefs addressing this issue. All of this (including the issue of the Prestwoods' bankruptcy and its effect on FmHA's claim, and the issue of FmHA's allowing the accumulation of an enormous debt before foreclosure) was argued before the trial court and was included in the record in the prior appeal. (5) SEI raised the issue of FmHA's not being a party to this action, in both the trial court and this Court in the prior appeal. (6) As previously noted, SEI also raised the issue of FmHA's allowing the accumulation of an enormous debt, in its brief filed with the trial court after the May 28, 1996, hearing.
In the prior appeal, we determined "[t]he trial court [had] correctly included the higher-priority mortgage in the redemption price." 720 So.2d at 875. Thus, this became the law of the case — that the unpaid deficiency balance owing to FmHA was to be included in the redemption price to be paid by SEI — and it could not be revisited on remand, because we find no evidence to support the trial court's finding that FmHA had committed a fraud on the court.
When calculating the redemption price in its April 20, 2000, order, the trial court stated that it was using the preamendment statute (§§6-5-230 through 6-5-246 — repealed effective January 1, 1989) to calculate the redemption price. As previously noted, the foreclosure occurred on September 1, 1994, and Ala. Code 1975, § 6-5-257, states: "This article applies only to mortgages foreclosed after January 1, 1989." Consequently, the preamendment statute does not apply in this case, and the trial court should have used the provisions of Ala. Code 1975, § 6-5-253, and our opinion in the prior appeal to calculate the redemption price to be paid by SEI. Thus, *Page 273 
we reverse that portion of the April 20, 2000, order wherein the redemption price was calculated under the preamendment statute and remand for the calculation of the redemption price pursuant to Ala. Code 1975, § 6-5-253, and our opinion in Southeast Enters., Inc.,720 So.2d 873.
Bennie Herring's motion to dismiss the appeal (see note 1) is denied. The April 20, 2000, judgment of the trial court is affirmed insofar as it finds that the Byrds committed a fraud upon the court in regard to the "timber cut and sold" during the redemption period; and that judgment is reversed insofar as it finds that SEI is not required to pay the higher-priority mortgage held by FmHA and insofar as it calculates the redemption price to be paid by SEI. This case is remanded for proceedings consistent with this opinion.
MOTION TO DISMISS APPEAL DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Lyons and Johnstone, JJ., concur.
Woodall, J., concurs in the result.
[1] Bennie D. Herring, an officer with SEI, filed, pro se, a motion to dismiss these appeals as untimely. Besides contending that the appeal was untimely, Herring also contends: (1) that when the Byrds filed with this Court a petition for a writ of mandamus on July 5, 2000, jurisdiction was removed from the trial court and the trial court could not rule on any pending motions, including the motion to stay and the motion to alter, amend, or vacate the judgment; and (2) that the Byrds' time for appeal began to run either on June 28, 2000, when the trial court ordered that a deed be issued, because SEI had fulfilled all the requirements of the April 20, 2000, order, or on July 5, 2000, when, he contends, the filing of the petition for a writ of mandamus rendered moot all pending postjudgment motions. On September 13, 2000, this Court dismissed the Byrds' petition for a writ of mandamus, pursuant to their motion to dismiss.
[2] The September 13, 1996, order included this provision:
 "5. . . . [I]f [SEI] shall pay the aforesaid sum of $1,289,177.54, with interest to the date of payment, to the Clerk of Court within thirty (30) days of the date of this judgment, the [Byrds] shall convey the title to said property to [SEI] free from any lien. Failing therein, [SEI's] right of redemption shall cease."
(Emphasis added.) We recognize that a judgment ordering redemption of real property merely allows the plaintiff (here, SEI) to purchase the property from the defendant or defendants (here, the Byrds) within a specified time at a fixed dollar amount, with the condition that if the plaintiff fails to comply with the terms of the judgment, then the plaintiff loses the right of redemption. Rhoden v. Miller, 495 So.2d 54,58 (Ala. 1986).
[3] The basis for this Court's denial of the Byrds' motion to dismiss the appeal is set out in footnote 1 of the opinion released in the prior appeal. 720 So.2d at 874.
[4] In February 1997, while the prior appeal was pending in this Court, SEI filed with this Court a motion to remand the action to the circuit court
 "with instructions that the circuit court grant [SEI] an oral hearing at which [SEI] will furnish evidence to the court that, not only did [the Byrds] furnish fraudulent information to [SEI], but [the Byrds] also committed a fraud on the court and that the court's reliance on that fraud was the basis of its final order from which [SEI is] appealing. [SEI] will prove by documents that [the Byrds] sold approximately one hundred seventy thousand ($170,000.00) dollars worth of timber in the spring of 1995 and concealed that fact from [SEI] and the court."
SEI further argued in its motion to remand that the Byrds' "conceal[ment of] this fact, when [they are] statutorily required to give SEI credit, is fraud" and that when the Byrds "[a]llow[ed] the circuit court to issue a final order based on this fraudulently calculated charge, [it was] a fraud on the court."
The Byrds argue that SEI's contention — concerning fraud upon the court — was previously rejected by this Court. We do not agree. On March 28, 1997, SEI's motion to remand was "denied without prejudice to [SEI] to file in the trial court a motion to proceed pursuant to Rule 8(b), [Ala.R.App.P.]"
In the prior appeal, the record contained no evidence indicating that the Byrds had concealed information from SEI and the trial court about timber sold during the statutory period of redemption. In its reply brief in the prior appeal, SEI stated that it recognized that the record needed further development to support its contention that the Byrds had committed a fraud upon the court.
[5] Section 6-5-253(d)(1) states:
 "(d) Any one entitled and desiring to redeem shall be granted a credit as against the amount of money required to be paid for redemption as follows:
 "(1) For all timber cut or sold on the land by the purchaser or his or her transferees, during the statutory period of redemption."
(Emphasis added.)
[6] Under the terms of the April 14, 1995, contract, Pea River Timber Company, Inc., advanced $170,000 to the Byrds and established the rates to be used as a credit against this advance. The contract provided that the Byrds would repay Pea River Timber Company, Inc., in the event the timber could not be harvested, as a result of the redemption of the property. There was approximately $3,000 worth of timber harvested from the property in July 1995, and there has been additional timber harvested from the property since the issuance of the trial court's September 1996 judgment.
[7] In the September 13, 1996, order, SEI did not receive credit forany timber cut, sold, or destroyed during the statutory period of redemption, and this Court determined that "[t]he trial court erred to the extent it failed to determine the value of the timber the Byrds cut and to give SEI a credit for that sum against the redemption price." 720 So.2d at 878.
[8] The Byrds admit that they have received $220,000 ($170,000 + $50,000) from Pea River Timber Company, Inc., and that timber that had been pushed and piled on the property had a value of $10,500. The Byrds contend that they are entitled to have $19,452 added to the redemption price because they say they have paid that amount in interest to Pea River Timber Company.
[9] Bennie Herring is the only witness who testified that the Prestwoods defaulted in 1980. There was no testimony from either the Prestwoods or a representative of FmHA as to the date of the Prestwoods' default. Herring also testified at the July 1999 hearing that in 1980 the Prestwoods agreed to voluntarily liquidate. There was no testimony from either the Prestwoods or a representative of FmHA as to this.
SEI contends that the statutory limitations period began to run in 1980 and that FmHA's claim was barred because FmHA failed to file an action on the note within six years.