MURDOCK, Justice
(dissenting in case no. 1141416).
I respectfully dissent because I disagree with certain conclusions reached in the main opinion as hereinafter discussed. As a prelude in some respects for that discussion, I first note related, but independent, concerns as to the articulation, or at least the application of, certain rules in Pavilion Development, L.L.C. v. JBJ Partnership, 77 So.3d 133 (Ala.2011) (“Pavilion II”), and Pavilion Development, L.L.C. v. JBJ Partnership, 142 So.3d 535 (Ala.2013) (“Pavilion III”).[12]
In particular, I question this Court’s application in Pavilion II and Pavilion III of the rule that a party may not effect a piecemeal redemption of property that has been foreclosed. In Costa & Head (Birmingham One), Ltd. v. National Bank of Commerce of Birmingham, 569 So.2d 360 (Ala.1990), the case cited for this principle in Pavilion II, the question presented was whether the redemptioner could redeem only a portion of the real property in question (in that case, the land but not the permanent building located on that land) and whether, by such a piecemeal redemption, the redemptioner could avoid paying the purchaser at foreclosure the entire amount of the foreclosure purchase price. That is not the situation presented here. So long as there is not an attempt to redeem only part of a property in an effort to avoid making the foreclosure purchaser whole, I question why a redemptioner could not redeem foreclosed-upon property subject to the after-acquired interest of a third party in some or all of it. Thus, for example, I question why, in Pavilion II, the redemptioner could not have foreclosed upon the property subject to whatever easement rights had been acquired by the City of Huntsville following the foreclosure sale. For that matter, and again assuming that the foreclosure purchaser is reimbursed the full amount paid at foreclosure (plus taxes and other related expenditures), why could not the redemptioner redeem the foreclosed-upon property subject to the ownership interest of a third party (such as Louise and Fritz Nelson in this case) in one or more lots “sold off’ by the foreclosure purchaser after the foreclosure. Likewise, the same question may be posed as to the mortgage or lien interest of some third party that encumbers the property, such as the lien executed in favor of Pace Properties. (If that lien is not subsequently satisfied by proper payment of the debt it secures, then the redemp-tioner would simply face a subsequent foreclosure upon the property.)
That said, I turn now to two of the issues before us in the present iteration of this case. First, consistent with the basic premise of making the foreclosure pur *172 chaser whole, I respectfully disagree with the conclusion reached in Part III.C.2. of the main opinion. It appears to me that the amount of the post-foreclosure mortgages we require the redemptioner to pay exceeds the limitation imposed by § 6-5-253(a)(5), Ala.Code 1975, of “the [foreclosure] purchase price.”
Similarly, I believe we also err in Part III.C.3. of the main opinion by holding that the redemptioner must pay for the houses consti-ucted on the property following foreclosure. Specifically, we hold today that any improvement that increases the value of foreclosed property must be paid for by the redemptioner. Thus, Pavilion Development, L.L.C. (“Pavilion”), will be required to pay over $1.5 million, plus interest, for three houses that have been constructed on its property since the foreclosure. In so holding, I believe we depart from the intended meaning of our own statute and leave the mainstream of understanding as to how redemption from a foreclosure is supposed to work. See, e.g., discussion of 55 Am.Jur.2d Mortgages § 806 (2009) and 59A C.J.S. Mortgages § 1446 (2009), infra.
It is one thing to require a redemptioner to pay for repairs and what are referred to as “necessary ... improvements” in Moore v. Horton, 491 So.2d 921, 923 (Ala.1986), the primary case on this issue cited in the main opinion. Indeed, this Court’s discussion of improvements in Moore implies repairs or “improvements” designed to “preserve,” or further, an existing use of the property. It is another to allow a purchaser pursuant to a foreclosure, who has purchased the property with full awareness that it is subject to redemption for up to one year, to add any improvement it wishes, regardless of cost or compatibility with preexisting usage, and force a redemptioner to reimburse it for the same. Such an approach will in many cases effectively defeat the right to redeem.
The main opinion ends its reference to Moore v. Horton, by quoting Mopre’s definition of “improvement” as “‘“anything that enhances the value of the land.”’” 212 So.3d at 167 (quoting Moore, 491 So.2d at 923). But what constitutes a “necessary ... improvement” and what constitutes an “improvement” are two different things. The quoted passage from Moore offers a definition of the latter term only in aid of its explanation of what is meant by a “necessary improvement”:
“[W]e note that this Court, in Rodgers v. Dixon, 239 Ala. 72, 193 So. 741 (1940), stated:
“ ‘We have indicated that necessary permanent improvements have a well defined meaning in this jurisdiction, which is to 'preserve the property by properly keeping it in repair for its proper and reasonable use, having due regard for the necessities of each subject as to its kind and character. This includes not only ordinary repairs to restore the property after injury, decay, storm, flood, or fire, etc., but also valuable and useful additions and improvements to the property suited to its reasonable necessities, character and use. Snow v. Montesano Land Co., 206 Ala. 310, 89 So. 719 [ (1921) ]; Smith v. Sulzby, 205 Ala. 301, 87 So. 823 [ (1921) ]; 41 C.J. p. 645, § 649 et seq. Ewing v. First Nat. Bank, 227 Ala. 46, 148 So. 836 [ (1933) ]; Malone v. Nelson, 232 Ala. 243, 167 So. 714 [ (1936) ]. As to this each case is ruled by its facts.’ ”
Moore, 491 So.2d at 923 (some emphasis omitted; some emphasis added).
The “necessary permanent improvements” of which Moore speaks might include such things as the replacement of a roof or perhaps the replacement of fixtures *173 necessary to the continued functioning of a property in the mode in which it was functioning at the time of foreclosure, e.g., a new air-conditioning system, or perhaps even terraces or a levee to prevent flooding or erosion of farmland, or possibly even new landscaping to enable a business to continue to attract customers. But would it include, like here, an entirely new house on a previously vacant lot? If so, what else might it include? Could a foreclosure purchaser who paid $100,000 for an old house and a couple of acres of land erect a new 10-story office building costing millions of dollars and thereby thwart any right of redemption from a homeowner who had hoped to redeem and return to his home? Are not the type of necessary improvements for which a redemptioner is responsible limited to those “improvements” and repairs in keeping with the usage and “necessities” of the property at the time of foreclosure? Or as Moore put it, “improvements to the property suited to its reasonable necessities, character and use ” at the time of foreclosure. 491 So.2d at 423 (some emphasis omitted). See, e.g., Durr Drug Co. v. Acree, 241 Ala. 391, 2 So.2d 903 (1941) (explaining that “improvements” for which a redemptioner was responsible included a new roof and termite-control treatments). See generally Smith v. Sulzby, 205 Ala. 301, 302-03, 87 So. 823, 824 (1921) (“ ‘Improvements’ include ‘repairs,’ .... ”).
Cases explain that requiring the redemption payoff to include any new structure or use that increases the fair-market value of the property, no matter how expensive or out of sync with the “necessities, character and use” of the property at the time of foreclosure, would constitute what is referred to as a “burdening” of the right of redemption. Thus, in Hoffman v. Jordan, 263 Ala. 23, 29, 81 So.2d 546, 551-52 (1955), this Court explained:
“The suit in this case was filed on August 4, 1943, and W.B. Hoffman was served on August 6, 1943. He testified that when he built what is known as the little house and the lean-to to the old house, he knew that suit was pending and that he made these improvements in the summer of 1951. In the case of McQueen v. Whetstone, 127 Ala. 417, 30 So. 548, 552 [ (1900) ], with respect to improvements the rule was stated by this court as follows:
“ ‘The rule as to improvements on land by the mortgagee, as stated by Mr. Jones is: “That the mortgagee will not be allowed for them further than is proper to keep the premises in necessary repair. Unreasonable improvements may be of permanent benefit to the estate; but unless made with the consent and approbation of the mortgagor, no allowance can be made for them. The mortgagee has no right to impose them upon the owner, and thereby increase the burden of redemption.” ’ ”
(Emphasis added.) See also, e.g., Malone v. Nelson, 232 Ala. 243, 247, 167 So. 714, 718 (1936) (improvements, which had value of $665.50, allowed where they were “needed, and reasonable, and permanent” improvements and purchase price of property was $6,500); compare Southeast Enters., Inc. v. Byrd, 720 So.2d 873, 874 (Ala.1998) (improvements costing $102,000 made to property for which other costs of redemption, including debtor’s original purchase price, totaled about $1 million).
Hewing to the foregoing understanding of what is properly reimbursed in a redemption would keep Alabama aligned with redemption law generally throughout the nation. The general rule is concerned with not burdening the redemption right to the point that the right is effectively lost:
*174 “In order to be included in the redemption price, anything done to the property by the sheriffs sale purchaser must be necessary, either to keep the property in the same condition as when purchased or to avoid civil or criminal liability. Expenses on the property not serving these ends, unless consented to by the prospective redemptioner, cannot be added to the redemption price, regardless of whether the redemptioner might be benefitted by that work. Prer-edemption expenses may not be included in the redemption price on the sole basis that those expenses enhanced the value of the subject property.

“Amounts which have been paid to protect the premises may be included. Further, the amount necessary for redemption may include any out-of-pocket costs for maintenance, repair, upkeep, and insurance incurred by a foreclosing mortgagee.”

59A C.J.S. Mortgages § 1446 (2009) (emphasis added; footnotes omitted).
“Where the purchaser of property has given a mortgage and subsequently defaults on his or her payments, his or her entire interest in the property is not forfeited; the mortgagor has the right to redeem the property by paying the full debt plus interest and expenses incurred by the creditor due to default.
“Ordinarily, a court of equity will not decree redemption from sale of a part of mortgaged property upon payment of a part of the mortgage. Generally, the whole mortgage debt must be tendered or paid, including interest, certain expenses, and any amounts which have been paid to protect the premises. ...”
55 Am.Jur.2d Mortgages § 806 (2009) (emphasis added; footnotes omitted).[13]
For the foregoing reasons, I respectfully dissent.

. Pavilion II and Pavilion III were each decided by a division of the Court of which I was not a member.

. This guiding notion of a "preservation improvement,” i.e., the use of the term "improvement” in the sense of what is necessary to "preserve” and perhaps even enhance the property, but only in its character and use at the time of the foreclosure sale, is expressly reflected in Alabama's tax-foreclosure-redemption statute, Ala.Code 1975, § 40-10-122:
"(c) With respect to property which contains a residential structure at the time of the sale regardless of its location, the proposed redemptioner must pay to the purchaser or his or her transferee, in addition to any other requirements set forth in this section, the amounts set forth below:
"(1) All insurance premiums paid or owed by the purchaser for casualty loss coverage on the residential structure with interest on the payments at 12 percent per annum.
“(2) The value of all preservation improvements made on the property determined in accordance with this section with interest on the value at 12 percent per annum.
"(d) ... As used herein, 'preservation improvements' shall mean improvements made to preserve the property by properly keeping it in repair for its proper and reasonable use, having due regard for the kind and character of the property at the time of sale.”
(Emphasis added.)