674 So.2d 576 (1995)
W. Barrett NICHOLS, Jr.
v.
Gerald D. COLVIN, Jr., and Walter G. Brush.
2940636.
Court of Civil Appeals of Alabama.
August 25, 1995.
Rehearing Denied September 22, 1995.
Certiorari Denied January 26, 1996.
Douglas Corretti and Donna Shirley of Corretti & Newsom, Birmingham, for Appellant.
William H. Halbrooks, Birmingham, Gerald D. Colvin, Jr. of Bishop, Colvin, Johnson & Kent, Birmingham, for Appellees.
Alabama Supreme Court 1950008.
*577 ROBERTSON, Presiding Judge.
This case involves the statutory redemption of real property.
On January 6, 1986, Raines Property, Inc., executed a mortgage on Lots 58, 72, and 73 in the Crossgate Subdivision, Second Sector, to Jefferson Federal Savings and Loan Association of Birmingham (Jefferson Federal). On February 27, 1987, Raines Property conveyed all three lots to W. Barrett Nichols, Jr.
On March 8, 1991, the Resolution Trust Corporation (RTC) acquired all of the assets of Jefferson Federal. Thereafter, RTC foreclosed on the Raines Property mortgage and sold lots 58, 72, 73, and 113 of the Crossgate Subdivision, along with other parcels of property, to Gerald D. Colvin at a foreclosure sale on September 30, 1993. Colvin paid $128,044.01 for lots 58, 72, 73, 113, and other parcels of property. On December 9, 1993, Colvin conveyed lot 58 to Walter Brush.
On August 31, 1994, pursuant to § 6-5-252, Ala.Code 1975, Nichols made a written demand on Colvin for a statement in writing, within 10 days, of all lawful charges claimed by him for the redemption of lots 72 and 73.
On September 6, 1994, pursuant to § 6-5-252, Ala.Code 1975, Nichols made a written demand on Brush for a statement in writing, within 10 days, of all lawful charges claimed by him for the redemption of lot 58. On September 7, 1994, Colvin provided a written statement of all charges claimed by him for lots 72 and 73:
"As the mortgage deed reflects as recorded 9313/0819, lots 72 and 73 were sold at the foreclosure sale along with lots 58 and 113 and certain of the common area of the subdivision for a sale price of $128,044.01. Additional, lawful charges include the ad valorem tax redemption payments on the four lots. The amount of these ad valorem tax payments was $15,735.69. I calculate the interest on the sales price to be $15,365.28 to September 30, 1994. I calculate the interest on the amounts paid for ad valorem taxes to be $780.37. The total redemption price on the properties would therefore be $159,925.35. The property was sold in bulk.
"You have requested a statement of all lawful charges with respect to only lots 72 and 73. While your right to a piecemeal redemption may be a legal issue, I would allocate the following lawful charges to lots 72 and 73:

"Lot 72
 "Price at Foreclosure $40,000.00
 "12% Interest 4,800.00
 "Tax Redemption 3,264.28
 "Interest on Tax Redemption 130.57
 __________
 "TOTAL $48,194.85
"Lot 73
 "Price at Foreclosure $40,000.00
 "12% Interest 4,800.00
 "Tax Redemption 3,264.28
 "Interest on Tax Redemption 130.57
 __________
 "TOTAL $48,194.85"

On September 15, 1994, Brush provided a written statement of all charges he claimed for lot 58, totalling $55,718.08, which included charges of: $45,000 for the cost of the lot; $3,710.96 for interest on the purchase price of the lot from December 9, 1993, through September 30, 1994; $135 "to limb trees"; $1,000 for "8 hours tracked loader to fell trees from house site and remove to new sub-division, also break and pile rock for removal, pile top soil"; $750 for the installation of a "250 feet silt fence at $3.00 [per] foot"; $610 for house plans; $1,300 for the Jefferson County sewer impact fee; $932.36 for the Vestavia Hills permit fee; $190 for the Birmingham Water Works meter loop; $450 for Bonham and Buckner Plumbing to install the meter loop; $200 for a "Service Panel from Inventory"; $20 for temporary service from Alabama Power; $1,279.75 for Russo Corporation to haul away brush, trees, stumps, and rock from the site; and $140 for "Stake footing for house."
On September 29, 1994, Nichols filed a complaint for redemption, in the Jefferson County Circuit Court. Nichols alleged that the statements from Colvin and Brush were false and that they contained numerous charges that were unlawful and exaggerated. Nichols also alleged that Colvin had arbitrarily and capriciously assigned a value of $40,000 to lots 72 and 73, and that he was unable to ascertain the amount necessary to be tendered to redeem the properties. Nichols further alleged that Brush had listed improvements that were not lawful improvements, *578 and that Brush had cleared lot 58 by removing all trees, shrubs, bushes, and other natural growth, and that this clearing had rendered lot 58 unsightly and had substantially reduced the value of the property. Nichols requested the trial court to ascertain the true amount to be tendered by him to redeem lots 58, 72, and 73, and to enter a final judgment enforcing his right of redemption upon his tendering the amount ascertained by the court. Nichols also requested the trial court to determine the amount of diminution in the value of lot 58 resulting from Brush's removal of all trees, shrubs, bushes, and other natural growth, and to set off that amount from the amount to be tendered for his redemption of lot 58. Attached to Nichols's complaint were copies of the foreclosure deed to Colvin; Nichols's written demand on Colvin for a statement of all lawful charges for lots 72 and 73; Colvin's written statement of the charges that he claimed for lots 72 and 73; Nichols's written demand on Brush for a statement of all lawful charges for lot 58; and Brush's written statement of the charges that he claimed for lot 58.
On November 4, 1994, Colvin filed a motion to dismiss on the grounds that Nichols had failed to tender any funds for the redemption of the properties; that the complaint failed to state that Nichols had paid any funds into court; that the complaint failed to state any justifiable excuse for Nichols's failure to pay any funds into court for the redemption of the properties; that the complaint failed to state a basis for any assertion of the inaccuracy of the redemption amount in his written statement to Nichols; and that Nichols had failed to communicate to Colvin, before the end of the one-year redemption period, his intent to redeem the properties. On November 16, 1994, Brush filed a motion to dismiss, stating the same grounds as those specified in Colvin's motion to dismiss. On January 18, 1995, Colvin and Brush filed a memorandum in support of their motions to dismiss.
Following a hearing, the trial court entered separate judgments of dismissal for Colvin and Brush on February 21, 1995, dismissing Nichols's case for his failure to tender to Colvin and Brush, or to pay into court, "the redemption price."
Nichols appeals, raising one issue: whether the trial court erred in dismissing his case. This appeal is before this court pursuant to § 12-2-7, Ala.Code 1975.
In reviewing a judgment of dismissal, we do not consider whether the plaintiff would ultimately prevail, but only whether he or she has stated a claim whereby he or she may possibly prevail. Bluemly v. Little, 632 So.2d 1334 (Ala.1994).
Nichols contends on appeal that the dispute between Colvin and him concerned the "purchase prices" of lots 72 and 73, because, he says, there was no legal or justifiable basis for Colvin's allocating $80,000 of the $128,044.01 lump sum purchase price, which Colvin paid at the foreclosure sale for lots 58, 72, 73, 113, and the other parcels of property, to lots 72 and 73. He also contends that there was no legal or justifiable basis for Brush's $45,000 "cost of lot [58]." Nichols argues that because he could not ascertain the "purchase prices" of lots 58, 72, and 73, he was excused from tendering the amounts of Colvin and Brush's statements of charges, and, therefore, that the trial court erred in dismissing his complaint. Nichols further contends that Brush's statement of charges included charges for improvements that are not "permanent improvements" within the meaning of § 6-5-253, and that Brush incorrectly listed the cost of the improvements instead of the value of the improvements, citing Wallace v. Beasley, 439 So.2d 133 (Ala.1983), and Ladd v. Parmer, 278 Ala. 435, 178 So.2d 829 (1965). Nichols argues that because he disputed whether Brush's improvements were "permanent improvements" within the meaning of the law, he was excused from paying or tendering the amount of Brush's statement of charges to Brush before filing his complaint for redemption, and, therefore, that the trial court erred in dismissing his complaint. We first address Nichols's contention that he was excused from paying or tendering to Colvin and Brush the amounts of their statements of charges, provided pursuant to § 6-5-252, Ala.Code 1975, before filing his complaint for *579 redemption. Section 6-5-252, provides, in pertinent part:
"Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish... a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee."
"Lawful charges" is defined in § 6-5-253, Ala.Code 1975, which provides, in pertinent part:
"(a) Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments ... and all other lawful charges, also with interest as aforesaid; lawful charges are the following:
"(1) Permanent improvements as prescribed herein.
"(2) Taxes paid or assessed.
"(3) All insurance premiums paid or owed by the purchaser.
"(4) Any other valid lien or encumbrance paid or owned by such purchaser or his transferee....
"(5) Mortgagees of the purchaser, or their transferees, are considered transferees of the purchaser, and a party redeeming must pay all mortgages made by the purchaser or his or her transferee on the land to the extent of the purchase price."
The predecessor to § 6-5-253 was § 6-5-235, Ala.Code 1975, which was repealed by 1988 Ala.Acts, Act No. 88-441, effective January 1, 1989. The legislature made few changes in § 6-5-253 from the former section, § 6-5-235. See Comment to § 6-5-253. The Comment to § 6-5-253 specifically states that "[n]o changes were made in subdivisions (a)(1) and (a)(2)." Our supreme court has held that "where a statute has been construed, and is reenacted without material change, such construction must be accepted as part of the statute." Hamm v. Harrigan, 278 Ala. 372, 383, 178 So.2d 529, 540 (1965). Consequently, prior cases interpreting §§ 6-5-235(a)(1) and (a)(2) remain precedent for the interpretation of §§ 6-5-253(a)(1) and (a)(2).
Payment or tender to the purchaser or his or her transferee under § 6-5-235 was a condition precedent to filing a complaint to redeem, unless excused, Ross v. Edwards, 541 So.2d 507 (Ala.1989), and the same is true under § 6-5-253. Hamm. However, in Francis v. White, 160 Ala. 523, 49 So. 334 (1909), our supreme court held that a redemptioner's inability to ascertain the amounts necessary for tender or to be paid, his request for the court to ascertain the true amounts owed, and his offer to pay such amounts before insisting on his right to redeem, excused the redemptioner from the tender requirement of the redemption statute. Moreover, our supreme court has held that "[w]hen the statement of lawful charges claimed includes exaggerated or illegal demands, or if so questionable that the redemptioner, acting in good faith, cannot reasonably ascertain the amount he should tender for redemption, no tender need be made before filing a bill to redeem." Lavretta v. L. Hammel Dry Goods Co, 243 Ala. 34, 36, 8 So.2d 264, 265 (1942); Dorrough v. Barnett, 216 Ala. 599, 601, 114 So. 198, 199-200 (1927). Furthermore, our supreme court has held that if the redemptioner disputes whether an improvement made by the purchaser or his or her transferee is a "permanent improvement" within the meaning of § 6-5-253, the redemptioner need not submit the issue to a referee before filing a complaint to redeem. Ross, supra.
Nichols alleged in his complaint that Colvin and Brush had arbitrarily and capriciously assigned values of $40,000 each to lots 72 and 73, and $45,000 to lot 58. Nichols also alleged that he was unable to ascertain the correct purchase prices of the lots and to tender those amounts along with the other charges to Colvin and Brush. Nichols further alleged that in his statement of charges Brush had included charges that were exaggerated; *580 that many of the charges listed were not proper charges; that the improvements listed in Brush's statement were not permanent improvements within the meaning of § 6-5-253(a)(1); and that the charges for those improvements were not legitimate charges. Nichols requested the trial court to ascertain the amount necessary to be paid to redeem lots 58, 72, and 73, and upon his tender of that amount, to enter a judgment enforcing his right to redeem lots 58, 72, and 73.
We note that Brush, in his statement of charges, furnished his purchase price for lot 58 and not the "purchase price at the [foreclosure] sale."[1] It is clear from a review of the record in this case that the purchase prices at the foreclosure sale of lots 58, 72, and 73 were not ascertainable by Nichols without allocating portions of the $128,044.01 lump sum purchase price to each of the lots. It is equally clear that Nichols's complaint complied with the requirements set forth in Francis, supra, which excuse a redemptioner's payment or tender of the purchaser's amount of charges for the property before filing a complaint for redemption of the property.
We next address Nichols's contention that he was excused from paying or tendering the amount of Brush's statement of charges because he disputed whether Brush's improvements were "permanent improvements" within the meaning of § 6-5-253(a)(1). Section 6-5-254, Ala.Code 1975, like its predecessor, § 6-5-244, requires, as a prerequisite to filing a complaint for redemption, that the redemptioner appoint a referee to resolve any disputes regarding the "value" of the "permanent improvements" listed in the statement of lawful charges. See Ross, supra. The Comment to § 6-5-254 states, in pertinent part: "The words `value, of the permanent improvements' [have] been held to mean the market value of the improvements and not the costs thereof. Wallace v. Beasley, 439 So.2d 133 (Ala.1983); Ladd v. Parmer, 278 Ala. 435, 178 So.2d 829 (1965)." However, our supreme court has held that "when other charges are in dispute, [§ 6-5-254] does not require the appointment of a referee. (citation omitted). Likewise, [§ 6-5-254] does not require submission of substantive issues to arbitration. Norris v. Wynne, 247 Ala. 100, 103-04, 22 So.2d 730, 732 (1945) (`it is not the province of the arbitrators to determine what items are and what are not permanent improvements' and [§ 6-5-254] `contemplates that they shall only determine values, not substantive questions such as enter into a controversy of what is or [is] not a permanent improvement')." Ross, 541 So.2d at 509. Consequently, had Nichols merely disputed Brush's "value" of the improvements, his complaint would have been properly dismissed. Id., see also Hanback v. Moseley, 648 So.2d 600 (Ala.Civ.App. 1994). As stated before, Nichols also disputed whether Brush's improvements were "permanent improvements" within the meaning of § 6-5-253(a)(1). Therefore, because Nichols disputed whether Brush's improvements were "permanent improvements," and that being a proper question for the trial court, Nichols was excused from paying or tendering the amount of Brush's charges until the trial court determined which improvements were "permanent improvements" and fixed "the market value of the improvements." Ross, supra.
Based on the foregoing, we hold that Nichols's complaint sufficiently states claims upon which he may prevail and that the allegations of Nichols's complaint are sufficient to excuse the § 6-5-253 requirement that the purchase price be tendered prior to redemption. The judgment of the trial court is reversed, and this cause is remanded for further proceedings, including a determination of the "purchase price at the [foreclosure] sale" of lots 58, 72, and 73, and a determination of whether Brush's improvements were "permanent improvements" and, if so, the "market value" of those "permanent improvements."
REVERSED AND REMANDED WITH INSTRUCTIONS.
*581 THIGPEN and CRAWLEY, JJ., concur.
YATES and MONROE, JJ., dissent.
MONROE, Judge, dissenting.
I believe Nichols failed to comply with the redemption statutes and that the trial court correctly dismissed this action. Therefore, I must respectfully dissent.
Under the redemption statutes that became effective January 1, 1989, as applied to the facts of this case, Nichols should have paid into the court the amount of money necessary to redeem.
The new act outlines the requirements for the circuit court to take jurisdiction in a redemption case.
"Upon the filing of any complaint as provided in these sections and paying into court the amount of purchase money and the interest necessary for redemption and all lawful charges, ... the circuit court shall take jurisdiction thereof and settle and adjust all the rights and equities of the parties, as provided in this article."
§ 6-5-256, Ala.Code 1975 (emphasis added). Nichols, however, did not pay any money into the court, claiming he was excused from making the payment because he could not ascertain the purchase price of the lots and because Brush's statement of lawful charges included charges for improvements that, Nichols says, are not permanent improvements. However, the new act provides that
"within 10 days after receipt [of the statement of the value of permanent improvements] the proposed redemptioner either shall accept the value so stated by the then holder of the legal title, or disagreeing therewith, shall appoint a referee to ascertain the value of such permanent improvements and in writing notify the then holder of the legal title of his or her disagreement and of the fact and name of the referee appointed by him or her."
§ 6-5-254(a), Ala.Code 1975 (emphasis added). Furthermore, in Moore v. Horton, 491 So.2d 921, 924 (Ala.1986), the Supreme Court held:
"[T]he inclusion of improper or questionable charges is not, in and of itself, a valid excuse for failure to tender the amount owed. There must be an exercise of due diligence on the part of the person seeking redemption to ascertain the proper amount to be tendered. In ... Dicie v. Morris, 285 Ala. 650, 235 So.2d 796 (1970), this Court stated that there must be a bona fide disagreement between the parties as to what the lawful charges were before one side could seek the aid of the court."
As requested, Colvin and Brush provided Nichols with statements of lawful charges, which Nichols simply dismissed out of hand. Nichols gives no basis for his belief that the purchase prices and lawful charges included in Colvin and Brush's statements of lawful charges are "unlawful and exaggerated." There is no evidence that Nichols attempted to ascertain the proper amount to be paid into the court, let alone that he tried to use due diligence to ascertain the proper amount, as required in Moore, supra. Also, there is no evidence that Nichols appointed a referee to determine the value of the improvements that he disputes. It appears that Nichols was unhappy with the stated amount for redemption, so he immediately filed this action without following the proper statutory prerequisites. Therefore, his case was due to be dismissed.
I would affirm the judgment of the trial court. Therefore, I respectfully dissent.
YATES, J., concurs.
NOTES
[1] We note that Brush is entitled to that portion of the "purchase price paid at the sale, with interest at the rate allowed on money judgments" for lot 58 and not the amount that he paid Colvin for lot 58. § 6-5-253(a), Ala.Code 1975; Wilkes v. Hood, 237 Ala. 72, 185 So. 748 (Ala.1939).